IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 62

| | | |
|---|---|---|
| PARKER EXCAVATING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| JOMCO CONTRACTING, LLC; | ) | |
| JOMCO, INC.; HIGHLANDS AT | ) | |
| CULLOWHEE LLC; WESLEY | ) | |
| SAMUEL OWENBY, JOSEPH | ) | |
| RILEY JOHNSON; and TRICIA | ) | |
| RUTH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint (Doc. 20, the "Second Motion to Dismiss"), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully recommends that the Second Motion to Dismiss be granted in part and denied in part.

## I.    Relevant Procedural Background

Plaintiff commenced this action in state court on January 23, 2019. It was subsequently removed to this Court.  <u>See</u>, Doc. 1.

Defendants JOMCO, Inc; JOMCO Contracting, LLC ("JOMCO Contracting"); Highlands at Cullowhee, LLC ("Highlands"); Wesley Samuel

Owenby ("Owenby"); Joseph Riley Johnson ("Johnson"); and Tricia Ruth ("Ruth") (collectively, "Defendants") responded by filing a Joint Motion to Dismiss and a supporting brief (the "First Motion to Dismiss"). Docs. 5 & 6.

On May 9, 2019, Plaintiff was granted leave to file an Amended Complaint and the First Motion to Dismiss was denied as moot. <u>See</u>, Docs. 17 & 18.

On May 23, 2019, Defendants filed the instant Second Motion to Dismiss along with a supporting memorandum. Docs. 20, 21. Plaintiff responded in opposition on June 4, 2019. Doc. 22. Defendants did not file a reply.[1]

A hearing on the Second Motion to Dismiss and other matters was held on September 25, 2019.

## II.    Factual Background

The material facts, as alleged in Plaintiff's Amended Complaint (Doc. 12), are as follows:

### A. The Parties

Plaintiff is a North Carolina corporation and a licensed general contractor. Amended Complaint, Doc. 12 at ¶ 1.

---

[1] On July 30, 2019, Plaintiff filed a new Motion for Leave to Amend (Doc. 24) ("Second Motion to Amend"). By separate Order, the Second Motion to Amend has been denied. Consequently, Defendants' Second Motion to Dismiss is ripe for ruling.

JOMCO, Inc. is a Georgia corporation that was formed on May 31, 2011. Id. at ¶ 15. Plaintiff alleges that Johnson is the chief executive officer of JOMCO, Inc; Owenby is the chief financial officer; and Ruth is the corporate secretary. Id. at ¶ 16.

JOMCO Contracting is a Georgia limited liability company that was organized by Johnson on April 30, 2013. Id. at ¶ 19. Plaintiff makes various allegations that Johnson and Owenby are members, managers, and/or officers of this entity. See e.g., Id. at ¶ 5 (Owenby is the president in North Carolina and the CFO in Georgia); ¶ 6 (Johnson is a member/manager, the registered agent in North Carolina, and the CEO in Georgia); ¶ 26 (2017 annual report shows Owenby as president). Plaintiff further alleges that JOMCO Contracting has obtained a North Carolina general contractor's license, with Owenby as the qualifying individual. Id. at ¶ 29.

Highlands is a Georgia limited liability company that was formed by Johnson and Owenby on October 31, 2016. Id. at ¶ 34. It was subsequently registered in North Carolina. Id. at ¶¶ 4, 35.[2]

---

[2] In its Second Motion to Amend, Plaintiff sought to add allegations identifying the members of Highlands as being two (2) separate limited liability companies – Texas Investors and Southerly Development – and stating that Southerly Development was owned by Johnson, Owenby, and Johnson's father-in-law, Randy Homer.

## B. The Contracts and the Parties' Performance

On March 31, 2017, Highlands purchased approximately 12 acres of real property in Jackson County. Id. at ¶¶ 13, 33.

Plaintiff alleges that Joey Haben ("Haben")[3] contacted Plaintiff, identified himself as a superintendent for JOMCO, Inc., and solicited a bid from Plaintiff for work on the property. Id. at ¶¶ 13, 14.

On or about July 14, 2017, Plaintiff entered a subcontractor agreement with JOMCO, Inc. in the amount of $247,460.00 for grading and excavation work (the "Excavation Contract") Id. at ¶ 42.[4] The Excavation Contract was executed by Doug Parker on behalf of Plaintiff and by Johnson on behalf of JOMCO, Inc.[5] Plaintiff mobilized its equipment and began work. Id. at ¶ 46.

---

[3] Plaintiff refers to this individual as "Haben" or "Haban."

[4] Plaintiff also submitted bids for on-site and off-site wet utilities. Id. at ¶ 44. However, those bids were not accepted by JOMCO, Inc. at the time and Johnson stated that he could purchase those services more cheaply from another contractor from Georgia. Id. at ¶ 45.

[5] A copy of the Excavation Contract is not attached to Plaintiff's Amended Complaint but was attached to Plaintiff's original filing in state court. It appears on this Court's docket at Doc. 1 – 1 at 14 – 16. As the contracts at issue are relied on by Plaintiffs, they may be considered here. See e.g., Tetrev v. Pride Intern, Inc., 444 F.Supp.2d 524, 528 (D. S.C. 2006) ("on a 12(b)(6) motion, the court may properly consider a contract that is integral to the allegations contained in the complaint, which is referenced in both the complaint and the plaintiff's briefing in response to the motion to dismiss, and which the plaintiff had possession of and relied upon in framing his complaint.").

4

After Plaintiff had been on the project for a week, Haben requested that Plaintiff provide JOMCO, Inc. with a quote to remove and replace a driveway on adjacent property. Id. at ¶ 47. Plaintiff advised that the driveway work would cost approximately $7000-$8000. Haben approved this proposal and the work was completed in July 2017. Id. at ¶ 48.

On August 4, 2017, Plaintiff submitted an invoice for the driveway work in the amount of $7210, along with a payment request in the amount of $57,599.[6] Plaintiff received payment for these invoices on September 6, 2017. Id. at ¶¶ 49 – 50.

Also in September 2017, Plaintiff was advised that JOMCO, Inc.'s soil engineer had determined that the soil underneath the project was unsatisfactory and that it needed to be replaced with drier soil. At least 12 locations required soil repair treatment and Plaintiff and JOMCO, Inc. agreed that JOMCO, Inc. would receive additional compensation for this work, which constituted a change from the original terms of the Excavation Contract. Id. at ¶ 51.

---

[6] This payment request was presumably made pursuant to the Excavation Contract.

On October 4, 2017, Plaintiff submitted "invoicing for extra work approved by Haben . . . for items completed in the previous work period."  Id. at ¶ 60.[7]

In October 2017, another area of unsuitable soil was discovered. The soil engineer recommended that the additional unsuitable soil also be removed and replaced. This work would also have substantially increased the grading costs originally submitted by Plaintiff. Id. at ¶ 53. Johnson, however, asked his soil engineer to provide cheaper alternatives for addressing the soil problem. Id. at ¶ 54.[8]

By November 2017, Plaintiff had successfully replaced the soil originally identified as being problematic and was requesting direction from JOMCO, Inc. on how to proceed with the remaining soil issues. Id. at ¶ 61.

---

[7] This invoicing may refer to the soil repair work, though the Amended Complaint is not clear in this regard.

[8] Plaintiff alleges that "Johnson does not approve undercut proposal from [Plaintiff]." Id. at ¶ 55. The undersigned interprets this allegation to mean that Plaintiff submitted a proposal for work to address the additional soil problems identified by the engineer, but that proposal was not accepted.

In December 2017, Plaintiff continued to wait for direction regarding the remaining soil issues. Plaintiff also alleges that it had "received no payment" from JOMCO, Inc. Id. at ¶ 63.[9]

Plaintiff alleges that after "plans for the slope ordinance behind building number 2 [were] approved by Jackson County Code Enforcement," JOMCO, Inc. requested a change order bid from Plaintiff to build a retaining wall. Id. at ¶ 64. Plaintiff apparently submitted such a bid, JOMCO, Inc. accepted it, and Plaintiff constructed the retaining wall. Id. at ¶ 65.

Haben and Johnson then requested that Plaintiff provide additional services and goods, including stone that would be used in the foundation of four buildings to be constructed on the property. Plaintiff was told that JOMCO, Inc. wanted Plaintiff to purchase and provide the stone, labor, and equipment for the foundation work. Id. at ¶ 66. Plaintiff, however, advised Haben that Plaintiff could not begin excavating the footings for a building on the property until it had received some payment for the contract work and change orders it had already completed. Id. at ¶ 68.

On or about March 8, 2018, Plaintiff discussed payment issues with Johnson, who stated that JOMCO, Inc. had paid invoices on time but admitted

---

[9] The basis for this reference is unclear since it appears that, in September 2017, Plaintiff received payment for the driveway change order and another payment request. Id. at ¶ ¶ 49 – 50.

that other invoices were still open. Johnson further stated that he did not have to pay an invoice "until the bank had received the invoice for at least forty – five days." Id. at ¶ 69. At approximately the same time, JOMCO, Inc. made a payment of $10,850 in partial satisfaction of the invoice that had been submitted on October 4, 2017 for "the extra work completed." Id. at ¶ 71.

Later, after Plaintiff reiterated that it could not continue to wait on payment, JOMCO, Inc. paid $30,000 on March 16, 2018 and an additional $45,000 on April 20, 2018, all toward the outstanding balance. Id. at ¶¶ 72 - 73.

At approximately the same time, Plaintiff learned that another contractor from Georgia would be completing the wet utilities.[10] However, in April 2018, Plaintiff was told that Johnson would like another quote for the on-site and off-site wet utilities. The Amended Complaint suggests that JOMCO, Inc. intended to purchase the materials itself directly to avoid any markup costs from Plaintiff. Id. at ¶ 78.

On May 10, 2018, Plaintiff submitted a handwritten quote for the installation of underground water and sewer utilities. Id. at ¶ 83.

---

[10] Haben advised that the Georgia contractor did not have a North Carolina license and asked Plaintiff if the Georgia contractor could work under Plaintiff's license. Plaintiff objected and did not allow this arrangement. Id. at ¶¶ 75 – 76.

On or about May 11, 2018, Plaintiff and JOMCO, Inc. signed a second contract ("Utilities Contract") that covered the labor necessary to install underground water and sewer utilities. The Utilities Contract was in the amount of $144,390. Id. at ¶ 88.[11]

By May 18, 2018, materials for the project had not been ordered, which prevented Plaintiff from starting work. Plaintiff therefore advised that time was getting "tight" and that materials had to be ordered for Plaintiff to begin its work.    Id. at ¶ 92. It appears that Plaintiff subsequently did begin the utilities work as Plaintiff alleges that it properly performed its obligations under the terms of "the contract." Id. at ¶ 97.

Overall, Plaintiff alleges that JOMCO, Inc. "partially paid the invoicing but has failed to fully compensate [Plaintiff]." Plaintiff claims the following unpaid balances in that regard:

- Excavation Contract     $19,765      (Invoice Number 1741)
- Utilities Contract     $96,948
- Additional Work     $35,540      (Invoice Number 1742)

Id. at ¶¶ 96 – 99.

---

[11] In April 2018, Annie Windham became the project manager. Id. at ¶ 77. Plaintiff alleges that the Utilities Contract was executed by Windham on behalf of JOMCO, Inc. Id. at ¶ 93. A copy of the Utilities Contract was not attached to the Amended Complaint. However, it was attached to Plaintiff's original filing in state court and appears on the docket as Doc. 1 – 1 at 18 – 22.

9

Plaintiff further alleges that in the beginning of 2018, Owenby came to the site and began working on the project. Owenby and Plaintiff had several conversations regarding payment during which Owenby advised that he would try to obtain payment for the overdue invoices and, at the same time, requested that Plaintiff provide more work. Id. at ¶ 100.

Plaintiff contends that in September 2018, Owenby told Plaintiff that it could not get paid until the bank released more money and that the bank would not release any more money until a certificate of occupancy was issued. Id. at ¶¶ 101 – 102.

In October 2018, Plaintiff was asked "to complete the unsuitable material removal."[12] Plaintiff refused, however, because it had not been paid, and advised that it would not continue to work for JOMCO, Inc. without payment. Owenby then released $15,000 to Plaintiff on October 3, 2018 to entice Plaintiff to complete the extra work, which Plaintiff did complete in the hopes of expediting payment. Id. at ¶ 103.

---

[12] This statement would appear to refer to the additional soil remediation work identified by the soil engineer.

These hopes went unfulfilled, however, as JOMCO, Inc. failed to release payment to Plaintiff even after receiving a final certificate of occupancy for the buildings on the site. Id. at ¶ 111. [13]

In short, Plaintiff alleges that Johnson and Owenby continually blamed others for the lack of payment and insisted that Plaintiff continue to perform in order to be paid. Id. at ¶ 105.

## III. Legal Standard

When presented with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint on its face states a plausible claim for relief. See Francis v. Giacomelli, 588 F. 3d 186, 189, (4th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). That is, while "detailed factual allegations" are not required, a claim must contain sufficient factual allegations to support the

---

[13] Plaintiff also alleges that at the same time it was not receiving payment from JOMCO, Inc. "they" were upgrading "their" office located in Gainesville, Georgia. Id. at ¶ 113.

required elements of a cause of action. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see</u> <u>Consumeraffairs.com</u>, 591 F.3d at 256. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. <u>Consumeraffairs.com</u>, 591 F.3d at 256; <u>Giacomelli</u>, 588 F.3d at 193. In this regard, the Court accepts the well-pled allegations in the complaint as true and construes them in the light most favorable to the plaintiff. <u>Consumeraffairs.com, Inc.</u>, 591 F.3d at 255. The Court, however, is not required to accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." <u>Id.</u>; <u>see</u> <u>Giacomelli</u>, 588 F.3d at 192.

*[This section left blank intentionally]*

## IV.  Discussion

The Amended Complaint includes the following claims:

| Defendant | Breach of Contract | Quantum Meruit | Account Stated[14] | Chapter 75 | Civil Conspiracy |
|---|---|---|---|---|---|
| JOMCO Contracting, LLC | X | X | X | X | X |
| JOMCO, Inc. | X *(Not challenged)* | X *(Not challenged)* | X | X | X |
| Highlands at Cullowhee, LLC | X | X | X | X | X |
| Wesley Samuel Owenby | | | | X | X |
| Joseph Riley Johnson | | | | X | X |
| Tricia Ruth | | | | X | X |

---

14 Plaintiff's Amended Complaint states that "Defendants had an open account with Plaintiff during the time that Plaintiff provided contracting services and advanced expenses on their behalf." Doc. 12 at ¶ 136. In their briefing, Defendants assume that Plaintiff means to assert this claim against all three corporate entities—JOMCO, Inc., JOMCO Contracting, and Highlands.

13

### A. Claims Against Owenby

After the filing of the Second Motion to Dismiss, Owenby filed for bankruptcy protection and the claims against him were stayed. Docs. 25, 26. Accordingly, this memorandum does not address the Second Motion to Dismiss as it may pertain to Plaintiff's claims against Owenby.

### B. Breach of Contract

Under North Carolina law, a claim for breach of contract requires the existence of a valid contract and the breach of the terms of that contract. Wells Fargo Ins. Servs. USA, Inc. v. Link, 827 S.E.2d 458, 472 (N.C. 2019).

Defendants do not challenge Plaintiff's breach of contract claim against JOMCO, Inc. Rather, the Second Motion to Dismiss is directed at the breach of contract claims asserted against JOMCO Contracting and Highlands. Specifically, Defendants argue that JOMCO Contracting and Highlands were not parties to the contracts and therefore cannot be sued by Plaintiff under this theory. Doc. 21 at 3 – 4.

In its briefing, Plaintiff argues that its breach of contract claims should be allowed to proceed against JOMCO Contracting and Highlands as "Plaintiff has pleaded that there is no difference between the entities and goes to great lengths to attempt to track the Defendants' self-dealings showing that the Defendants are all the alter-ego of the other." Doc. 22 at 4. In support of this argument, Plaintiff states that JOMCO Contracting was registered as a

foreign LLC in North Carolina and was licensed to conduct business in North Carolina, while JOMCO, Inc. was not. Similarly, Plaintiff alleges that Highlands was not registered as a foreign business in North Carolina and "is the sole beneficiary of the transactions at question herein." Doc. 22 at 4.[15] In short, Plaintiff argues that "all of the Defendants are intertwined and had and maintained control of the multiple LLCs throughout the time they contracted and dealt with the Plaintiff." Doc. 22 at 5.

The undersigned finds Plaintiff's allegations to be conclusory in this regard. The Excavation Contract and the Utilities Contract explicitly state that they are made by and between Plaintiff and JOMCO, Inc. <u>See</u>, Doc. 1-1. Further, the documents indicate they were executed by representatives of Plaintiff and JOMCO, Inc. Though Plaintiff argues the letterhead on which the contracts is written is ambiguous since it references "JOMCO Contracting," the letterhead actually appears to say "JOMCO Contractors." <u>Id</u>.

Next, the Amended Complaint does not contain sufficient factual allegations to support a conclusion that the persons with whom Plaintiff was interacting – Johnson, Haben, Windham, and Owenby – were acting on behalf of any entity other than JOMCO, Inc., or that Plaintiff had any reason to

---

[15] During the hearing, Plaintiff's counsel stated that Plaintiff was withdrawing Plaintiff's breach of contract claim against Highlands. Nonetheless, the analysis that follows applies equally to Highlands and to JOMCO Contracting.

believe it was interacting with representatives of an entity other than JOMCO, Inc. Though Plaintiff may have later discovered that Johnson, Owenby, and/or others held ownership interests in various of the corporate defendants, this after-acquired information would not support a finding that Plaintiff was doing business with any entity other than JOMCO, Inc.

Accordingly, the undersigned will recommend that Plaintiff's claims for breach of contract against JOMCO Contracting and Highlands be dismissed.

### C. Quantum Meruit

"To recover in *quantum meruit,* a plaintiff must prove three elements: (1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." Henderson v. Garcia Motorrad, LLC, 789 S.E.2d 569, 2016 WL 3410383, at * 6 (N.C. Ct. App. 2016) (internal quotations and citations omitted).

Defendants argue that the Amended Complaint contains no allegations that would support a quantum meruit claim against JOMCO Contracting or Highlands as Plaintiff does not identify any benefit it conferred on either of those entities. Doc. 21 at 5. Further as to Highlands, Defendants argue that to the extent Plaintiff alleges it conferred a benefit on Highlands as the owner of the property, because Plaintiff is a subcontractor claiming nonpayment by a general contractor (JOMCO, Inc.), it cannot recover directly from the property

owner (Highlands) in quantum meruit unless the owner (Highlands) created the situation through its own unjustified failure to pay. Doc 21 at 6.

Plaintiff's arguments regarding its quantum meruit claim are the same as for its breach of contract claims. These arguments, however, lead to the same result. Though Plaintiff may have later discovered that some of the personnel with whom it was interacting had relationships with more than one of the corporate defendants, the allegations of the Amended Complaint do not indicate that Plaintiff's services were rendered to, or knowingly and voluntarily accepted by, an entity other than JOMCO, Inc.

Accordingly, the undersigned will recommend that Plaintiff's claims for quantum meruit against JOMCO Contracting and Highlands be dismissed.

### D. Account Stated

"There are four basic elements to an account stated cause of action: (1) a calculation of the balance due; (2) submission of a statement to the party to be charged; (3) acknowledgment of the correctness of that statement by the party to be charged; and (4) a promise, express or implied, by the party to be charged to pay the balance due." Mast, Mast, Johnson, Wells & Trimyer, P.A. v. Lane, 228 N.C. App. 294, 296–97, 745 S.E.2d 56, 58 (2013) (internal citations and quotations omitted).

Defendants argue that Plaintiff's account stated claim fails the second element as the Amended Complaint only references invoices that were directed

to JOMCO, Inc. and that even as to JOMCO, Inc., there is no allegation that the company agreed to the statements or promised any payment. Doc. 21 at 7.

Plaintiff disagrees and argues that it submitted invoices through Johnson, Owenby, and Ruth, that these individuals acknowledged and accepted the invoices, and that these individuals were "agents of all of the corporate Defendants". Doc. 22 at 8.

The Amended Complaint does not provide sufficient factual allegations that the invoices were submitted, or intended to be submitted, to JOMCO Contracting or to Highlands or persons acting on behalf of those entities.

However, the undersigned is not persuaded at this stage that Plaintiff's allegations on this claim as against JOMCO, Inc., the entity with which Plaintiff was doing business, are deficient and should be dismissed. Plaintiff has alleged that following submission of certain bills and the passage of a "reasonable time," "Defendants…lodged no objection to the statement of monies due Plaintiff for the grading services rendered and expenses advanced." Doc. 12, ¶ 138.

Therefore, the undersigned will recommend that the Motion be granted in part and denied in part as to this claim.

### E. Chapter 75

To establish a prima facie claim for a violation of N.C.G.S. § 75-1.1 ("Chapter 75"), "a plaintiff must show (1) an unfair or deceptive act or practice,

or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff." Spartan Leasing, Inc. v. Pollard, 101 N.C. App. 450, 400 S.E.2d 476, 460-61 (1991). Generally, "a practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Barbee v. Atlantic Marine Sales & Service, Inc., 115 N.C. App. 641, 446 S.E.2d 117, 121 (1994) (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981)).

Here, Defendants argue that Plaintiff's Chapter 75 claim is incoherent and includes no allegations against JOMCO Contracting, Highlands, or the individual Defendants. As to JOMCO, Inc., Defendants contend that Plaintiff has not alleged substantial aggravating circumstances in connection with the contracts, and that the few specific, non-conclusory allegations that are presented do not show such circumstances. Doc. 21 at 9.

For its part, Plaintiff contends that by creating JOMCO Contracting and conducting JOMCO Contracting's business under the name of JOMCO, Inc. instead of JOMCO Contracting, and by setting up Highlands, an entity that was designed "to receive the benefit of the contracts obtained by JOMCO, Inc. and JOMCO Contracting, LLC," Defendants have violated established public policy. Doc. 22 at 9. Plaintiff further argues that Defendants inequitably asserted their power by holding up payment for services previously rendered

19

by Plaintiff and by placing Plaintiff in a position of either continuing work in order to receive payment or walking away and lessening the chance of receiving compensation for the work Plaintiff had completed. Doc 22 at 10.

The undersigned does not find Plaintiff's arguments to be persuasive.

With respect to the defendants other than JOMCO, Inc., as discussed above, the Amended Complaint, as well as the Excavation Contract and Utilities Contract, indicate that Plaintiff was engaged by and had contractual agreements only with JOMCO, Inc. The record does not contain sufficient factual allegations that Defendants established JOMCO Contracting to conduct business under the name of JOMCO, Inc. or that the acts of creating JOMCO Contracting and Highlands were part of an unfair or deceptive scheme or practice. Further, Plaintiff does not provide sufficient factual allegations to support a conclusion that Defendants misrepresented the licensing status, authority, or ownership of the corporate entities or that Plaintiff relied on such representations.[16]

As to JOMCO, Inc. "[i]t is well recognized ... that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or

---

[16] Plaintiff acknowledges that it was unaware of the structure of the corporate defendants and "never questioned the difference between [JOMCO, Inc.] and [JOMCO Contracting]." Doc. 12 at ¶ 118.

deceptive to sustain an action under N.C.G.S. § 75–1.1." <u>Branch Banking and Trust Co. v. Thompson</u>, 107 N.C.App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied,* 332 N.C. 482, 421 S.E.2d 350 (1992) (citations omitted). Consequently, a plaintiff in these circumstances must show "substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." <u>Id</u>.

"It is 'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.'" <u>Eastover Ridge, L.L.C. v. Metric Constructors, Inc.</u>, 139 N.C. App. 360, 367–68, 533 S.E.2d 827, 832–33 (2000) (quoting <u>Broussard v. Meineke Discount Muffler Shops</u>, 155 F.3d 331, 347 (4th Cir.1998).

Plaintiff argues that this requirement has been met by "Defendants [sic] deception to the state and to the Plaintiff" and by Defendants' "willingness to further ignore the licensing policies of the state by bringing other contractors from the state of Georgia into the state under the Plaintiff's privilege license for the Defendants' own benefit." Doc. 22 at 11. However, the Amended Complaint does not provide facts that would support a finding that the corporate entities were created or organized in such a way as to constitute a substantial aggravating circumstance attending the alleged breach by JOMCO, Inc. of the Excavation Contract and the Utilities Contract. In

addition, although Haben asked Plaintiff if the Georgia contractor that was coming to work on the soil remediation issues could work under Plaintiff's license, Plaintiff objected and did not allow this arrangement.

Accordingly, the undersigned will recommend that the Second Motion to Dismiss be granted with regard to Plaintiff's Chapter 75 claim.

### F. Civil Conspiracy

The elements of civil conspiracy under North Carolina law are: "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" Strickland v. Hedrick, 194 N.C.App. 1, 19, 669 S.E.2d 61, 72 (2008) (citations omitted).

"There is no independent cause of action for civil conspiracy. Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." Sellers v. Morton, 191 N.C. App. 75, 83, 661 S.E.2d 915, 922 (2008) (internal citations and quotations omitted).

Here, the factual allegations in Plaintiff's Amended Complaint support, at this stage, Plaintiff's claims for breach of contract, quantum meruit, and account stated against JOMCO, Inc. but not claims against the other

Defendants or based on other theories. Accordingly, dismissal of Plaintiff's claim for civil conspiracy will be recommended as well.

## V.  Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** as follows:

1. That Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint (Doc. 20):

    a. Be **DENIED** as to Plaintiff's claim for account stated as to JOMCO, Inc.; and

    b. Be **GRANTED** otherwise and that Plaintiff's claims for violations of Chapter 75 and Civil Conspiracy against JOMCO, Inc, and all claims against JOMCO, Contracting, LLC; Highlands at Cullowhee, LLC; Joseph Riley Johnson; and Tricia Ruth be **DISMISSED**.

2. That this action be allowed to proceed against JOMCO, Inc. on Plaintiff's claims for breach of contract, quantum meruit, and account stated, with Plaintiff's claims against Owenby remaining stayed.

Signed: December 17, 2019

W. Carleton Metcalf
United States Magistrate Judge

23

**Time for Objections**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).